FILED
United States Court of Appeals
Tenth Circuit

**July 27, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ALFREDO HUIZAR,

      Defendant-Appellant.

No. 11-6270

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:10-00169-R-1)**

Terri Coulter, Oklahoma City, Oklahoma, for Defendant-Appellant.

Suzanne Mitchell, Assistant United States Attorney (Sanford C. Coats, United
States Attorney, and Rozia McKinney-Foster, Assistant United States Attorney,
with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**GORSUCH**, Circuit Judge.

When Alfredo Huizar pleaded guilty to reentering the United States

illegally after an earlier deportation, the district court began the business of

settling on a sentence. As these things go, the court started by trying to get a fix

on the appropriate advisory guidelines range. And as part of that effort the district court held Mr. Huizar's 1995 California conviction for residential burglary qualified as a "crime of violence," triggering a sixteen-level enhancement. The court then proceeded to craft its own sentence relying on and incorporating that enhancement. On appeal, Mr. Huizar argues the enhancement wasn't legally authorized and his sentence needs to be reconsidered. And he is right about that.

The guidelines suggest that among the "crimes of violence" warranting a sentencing enhancement is any "burglary of a dwelling." U.S.S.G. § 2L1.2(b)(1)(A)(ii) & Application Note 1(B)(iii). Given this, one might be excused for thinking the fact a California court convicted Mr. Huizar of residential burglary neatly resolves the case. He burgled a dwelling, under § 2L1.2 that's a "crime of violence," so the enhancement applies.

But the law's path is a bit more circuitous than that. In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court held the word "burglary," at least as it appears in the Armed Career Criminal Act (ACCA), *doesn't* refer to whatever conduct the states consider to be burglary. Or, for that matter, to conduct the common law considered burglary. Instead, *Taylor* told us, the term "burglary" has a professedly more "generic, contemporary meaning" ascribed to it by the Court. *See* 495 U.S. at 590-92, 598-99. And for this court's part, we have already extended *Taylor*'s ACCA analysis to the sentencing guidelines context,

engrafting it on § 2L1.2's use of the phrase "burglary of a dwelling." *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009). So it is that to qualify for a § 2L1.2 sentencing enhancement under our precedents Mr. Huizar's California conviction must meet *Taylor*'s particular definition of burglary and be aimed at a dwelling — in the end requiring proof that he committed an "unlawful or unprivileged entry into, or remaining in" a dwelling "with intent to commit a crime." *See Taylor*, 495 U.S. at 598.

The problem is, we can't be sure Mr. Huizar's California conviction touches all these bases. California's burglary statute, Cal. Penal Code § 459, doesn't require proof that the burgled place was a dwelling. Neither does it require proof that the defendant's entry was unlawful or unprivileged: in California, one can burgle a place after being invited in. *See United States v. Strahl*, 958 F.2d 980, 983 (10th Cir. 1992). For both these reasons, we can't say as a categorical matter that a California burglary conviction like Mr. Huizar's qualifies as a "generic" burglary of a dwelling meriting a § 2L1.2 sentencing enhancement.

But even that doesn't end our inquiry. When a state's definition of an offense is, as a categorical matter, broader than the federal "generic" definition of a crime, our precedent indicates that we may — at least sometimes — apply the so-called "modified categorical approach." Under this approach we consult certain authoritative documents (indictments, informations, pleas, and the like) to

ascertain whether the defendant's offense was, in actuality, the "generic" offense. *See, e.g.*, *United States v. Venzor-Granillo*, 668 F.3d 1224, 1229 (10th Cir. 2012). And everyone before us agrees this approach may be used to determine whether Mr. Huizar's burglary meets the federal "generic" definition of residential burglary. To be sure, before the district court Mr. Huizar disputed the applicability of the modified categorical approach to his case. But in this court he has conceded otherwise, stating at oral argument that we may properly employ it in light of *Venzor-Granillo*. 668 F.3d at 1228-31. Given that concession, and because it makes no difference to the outcome of this case, we assume without deciding the modified categorical approach may be used here.

Assuming as much doesn't change the outcome because, even using the modified categorical approach, we *still* can't be sure that Mr. Huizar's California burglary involved the unlawful or unprivileged entry required to establish a "generic" residential burglary. Of course, looking to the authoritative materials surrounding his conviction we quickly see that California authorities issued an information charging Mr. Huizar with "unlawfully" entering a dwelling. And we see as well that Mr. Huizar pleaded guilty to that charge. But even with this new information in hand, we can't be certain his entry was unlawful or unprivileged in the "generic" sense. And certain we must be: whether we use a categorical or the modified categorical approach, our precedent requires the government to show that Mr. Huizar's conviction "necessarily" qualifies as "generic" burglary before

- 4 -

either the ACCA or § 2L1.2's sentencing enhancement may be triggered. *See Taylor*, 495 U.S. at 602 (ACCA); *Shepard v. United States*, 544 U.S. 13, 16, 21, 24 (2005) (same); *Venzor-Granillo*, 668 F.3d at 1229 (sentencing guidelines).

We can't be certain because the word "unlawfully" in Mr. Huizar's charging document could be doing at least two — entirely different — things. First, it is *possible* the prosecution added the word "unlawfully" to suggest Mr. Huizar's entry was unlawful in the "generic" federal sense. But there was no need to do so. Nothing turned on it. A burglary conviction could be won against Mr. Huizar all the same: in California, again, one can just as readily commit burglary after being invited in. Second, and very differently, the word could have been added to address a recognized affirmative defense in California law. A burglary defendant in California may avoid a conviction by showing "the owner *actively* invite[d] the accused to enter, *knowing* the illegal, felonious intention in the mind of the invitee." *See, e.g.*, *People v. Sherow*, 128 Cal. Rptr. 3d 255, 259 (Cal. Ct. App. 2011) (emphasis in original, quotation omitted). Sometimes loosely called the "informed consent" defense, it is possible the prosecution added the word "unlawfully" to rule out this defense in Mr. Huizar's case. Because at least two live possibilities exist about the work the term "unlawfully" might be doing in Mr. Huizar's charging document, we can't say as a categorical (or modified categorical) matter that Mr. Huizar's burglary *necessarily* qualifies as a "generic" burglary.

- 5 -

An example helps illuminate the problem. Take the defendant in *Sherow*. The state charged him with "burglarizing" a pawn shop by entering with the intent to sell stolen DVDs. Now, surely fencing ill-gotten goods is a crime most everywhere. But just as surely it seems an odd thing to call the activity a "burglary." We usually ("generically") think of burglary as involving an entirely unlawful or unprivileged entry, not walking into a pawn shop to sell goods during working hours. But California is different. It defines burglary to encompass *any* entry (lawful or unlawful) with the intent to commit a felony. So in California the state *could* charge Mr. Sherow with burglarizing even a shop he entered to sell (stolen) goods to a willing buyer. And this oddity is only followed by another. Mr. Sherow could avoid a conviction by showing "informed consent" — by showing the pawn shop manager invited him to enter the shop *knowing of his felonious intent* to sell stolen merchandise. On such a showing, Mr. Sherow's activity all of a sudden no longer qualifies as a burglary even in California, whatever else it might be called and however else it might be punished. 128 Cal. Rptr. 3d at 259-64.

Now to our curious situation add this assumption: the state's burglary indictment says Mr. Sherow "unlawfully" entered the pawn shop. By adding the word "unlawfully," it's possible the state prosecutors meant to charge Mr. Sherow with entering the pawn shop without *any* consent from the manager. But there was no reason for the prosecutors to do so in order to win a conviction. Maybe

they foresaw the possibility Mr. Sherow would commit a federal crime some time in the future and meant to lay the foundation for a sentencing enhancement or ACCA charge. A very prescient and helpful move for the benefit of future federal prosecutors surely, but otherwise pointless for state prosecutors seeking to prove a state crime. Alternatively, it is possible the state prosecutors added the word in order to indicate Mr. Sherow entered without the manager's *informed* consent. In the unconventional world California has constructed, the word "unlawfully" in this scenario does real work under state law, aiming directly at an affirmative defense and claiming Mr. Sherow can't prove it.

Given these dual and dueling possibilities, we cannot be certain Mr. Huizar's conviction was for a "generic" burglary. We cannot be sure his crime involved a totally nonconsensual entry rather than an idiosyncratic California burglary involving a lawful and consensual entry taken without the victim's involvement in the underlying felony. To be sure, it's possible Mr. Huizar's entry *was* unlawful in the "generic" sense. And to be sure too, the current cloud of uncertainty hovering over this question might have been lifted if Mr. Huizar had admitted in the state equivalent of a federal Rule 11 plea colloquy that he made his entry without any consent. But that kind of record we do not have in this case. All we have is the charging document and it does not *necessarily* show Mr. Huizar committed a "generic" burglary of a dwelling. And without that degree of

assurance, our precedent precludes the imposition of § 2L1.2's sixteen-level sentencing enhancement.

While the details may differ, the result we reach aligns perfectly with the Ninth Circuit's treatment of this issue in *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 940-46 (9th Cir. 2011) (en banc), as well as with the relevant portions of the concurrence, *see id.* at 974 (Berzon, J., concurring in the judgment). Neither is all this much of a surprise given that the California charging document in *Aguila-Montes de Oca* was virtually identical to the one now before us. *Id.* at 945. Admittedly, the Ninth Circuit majority and concurrence avidly disagreed on a variety of other questions, including whether a defendant's guilty plea constitutes an admission of everything in an indictment or whether the admission of guilt is restricted to the essential elements of the crime. *Compare id.* at 945 (majority), *with id.* at 962-64 (Berzon, J., concurring in the judgment). And we might well ask, too, whether state prosecutors choosing to allege an "unlawful" entry in an indictment must carry that burden of proof (either by taking responsibility to disprove the informed consent defense or by proving an entirely unlawful entry), even though state burglary law doesn't impose that burden on them. But in this case there's no need for us to tangle with these tangents. Whatever its legal consequences, the addition of the word "unlawfully" to the information against Mr. Huizar carries with it an interpretive ambiguity — and that ambiguity disposes of the § 2L1.2 inquiry.

For similar reasons, we have no need to rely on some of the other grounds the Ninth Circuit cited for its result. For example, the Ninth Circuit asserted the term "unlawfully" in a charging document could mean yet something else — beyond addressing the informed consent defense or equating Mr. Huizar's crime to a "generic" federal burglary. According to the Ninth Circuit, the term might *also* mean that the defendant entered the premises with a felonious intent. After all, the reasoning goes, California law allows a burglary conviction only if the defendant formed his felonious intent *before* his entry. *Id.* at 942-43. The difficulty is that the information at issue before us, like the one before the Ninth Circuit, *already* includes separate language specifically addressing this issue, alleging the defendant entered "with the intent to commit larceny and any felony." So for the Ninth Circuit's view to work, the term "unlawfully" must duplicate work already being done elsewhere in the charging document. The law, however, is usually wary of rendering words superfluous in legal documents. And one ambiguity is enough to resolve this case in Mr. Huizar's favor: we have no need to suppose a superfluity to secure a second.

For its part, the government replies by suggesting that, whatever the merits of our analysis, circuit precedent compels us to part ways with the Ninth Circuit and permit the enhancement. In particular, the government points to *United States v. Strahl*, 958 F.2d 980 (10th Cir. 1992). But in that case we held a charging document *insufficient* to establish a generic burglary. *Id*. at 984. And

- 9 -

that holding hardly helps the government's cause, let alone compels its course. Alternatively, the government points to *United States v. Torres-Gonzalez*, 1 F. App'x 834 (10th Cir. 2001) (unpublished). There we did hold that a defendant committed generic burglary based on a California complaint charging him with "unlawfully enter[ing]" a building. But that decision is not only unpublished and so non-binding. Even more importantly, it didn't purport to pass on the issue whether the term "unlawfully" in an indictment can be read as merely ruling out the consent defense, the argument Mr. Huizar now presses before us, the cause for our current concern, and the basis for our holding today. *Id.* at 836-37. And of course an issue not "raised in briefs or arguments nor discussed in the opinion of the [c]ourt" remains open and a decision resolving other issues merely in the same neighborhood cannot be taken "as a binding precedent on th[e] point." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 118 (1993) (quotation omitted).

Having ruled as we have, we pause to emphasize what remains open even now. We do not express any view on whether Mr. Huizar did or didn't commit what *Taylor* calls a "generic" burglary. And nothing in today's opinion prohibits the district court from considering Mr. Huizar's actual conduct in fashioning an appropriate sentence under 18 U.S.C. § 3553(a). This appeal concerns only a different, narrower, more mechanical, and admittedly more arcane question — whether using the categorical or modified categorical approach we can say Mr. Huizar's California conviction *necessarily* meets *Taylor*'s definition of "generic"

- 10 -

burglary.  Because we cannot be certain of *that*, our sentencing precedents preclude the imposition of § 2L1.2's sixteen-level enhancement.  And because we can't be sure what sentence the district court might select armed with this new information, a remand for resentencing is required.  *See United States v. Todd*, 515 F.3d 1128, 1134-35 (10th Cir. 2008) ("When a district court does err in calculating the applicable Guidelines range, we must remand for resentencing . . . unless we are able to ascertain that the court's [erroneous] calculation" didn't affect the ultimate sentence issued).

The case is remanded to the district court, with instructions to vacate Mr. Huizar's sentence and resentence him in light of this opinion.