**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSEPH R. DEGEARE,

     Defendant - Appellant.

No. 17-6080

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos. 5:16-CV-00648-C and 5:13-CR-00283-C-1)**
_____

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Ashley Altshuler, Assistant United States Attorney (Mark A. Yancey, United States Attorney with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Under the Armed Career Criminal Act (ACCA) of 1984, 18 U.S.C. § 924(e), an offender convicted of violating 18 U.S.C. § 922(g)(1) faces an enhanced prison sentence if he or she has at least three prior convictions for violent felonies or serious drugs offenses. In theory, deciding what offenses constitute violent felonies should

be simple enough. But in practice, it can be a tricky business—especially because we must be "certain" that the violent-felony moniker "necessarily" applies to a particular offense before we can treat that offense as an ACCA predicate. *United States v. Titties*, 852 F.3d 1257, 1268 (10th Cir. 2017) (quoting *United States v. Huizar*, 688 F.3d 1193, 1195 (10th Cir. 2012)).

We haven't yet addressed the precise level of certainty this standard requires. We need not do so today. Whatever the term "certainty" might mean, *id.* (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016)), it doesn't encompass the significant doubt we're left with here. And because we can't be "certain" that the offense at issue in this appeal is "necessarily" a violent felony, *id.*, we conclude that the district court erred in treating it as one for purposes of denying Joseph Degeare's 28 U.S.C. § 2255 motion. Accordingly, we reverse.

**Background**

In 2014, Degeare pleaded guilty to being a felon in possession of a firearm, *see* § 922(g)(1), and the sentencing court imposed a 15-year prison sentence under the ACCA, *see* § 924(e)(1) (imposing mandatory minimum prison sentence of 15 years for § 922(g)(1) conviction if offender has at least "three previous convictions . . . for a violent felony or a serious drug offense"). In doing so, the sentencing court treated five of Degeare's previous Oklahoma convictions as ACCA predicates: (1) his 1990 conviction for forcible sodomy, *see* Okla. Stat. Ann. tit. 21, § 888 (1982); (2) his two 1994 convictions for forcible sodomy, *see id.* § 888 (1992); (3) his 1994 conviction

2

for lewd molestation of a minor, *see id.* § 1123 (1992); and (4) his 2003 conviction for possession with intent to distribute, *see* Okla. Stat. Ann. tit. 63, § 2-401 (2002).

Degeare didn't appeal. But in 2015, he sought habeas relief under § 2255. After the district court denied his § 2255 motion, Degeare filed an untimely notice of appeal. We dismissed, and the Supreme Court denied review.

Relying on *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016), Degeare then sought and received authorization to file a second or successive § 2555 motion. *See* § 2255(h)(2); 28 U.S.C. § 2244(b)(3)(C). In that motion, Degeare argued that the sentencing court erred in treating four of his previous convictions as ACCA predicates: (1) his 1990 conviction for forcible sodomy, (2) his two 1994 convictions for forcible sodomy, and (3) his 1994 conviction for lewd molestation of a minor. Specifically, Degeare asserted that forcible sodomy and lewd molestation only constitute violent felonies under the ACCA's residual clause, *see* § 924(e)(2)(B)(ii), which the Supreme Court struck down as unconstitutionally vague in *Johnson*, *see* 135 S. Ct. at 2563; *Welch*, 136 S. Ct. at 1265 (holding that rule announced in *Johnson* applies retroactively to cases on collateral review). After *Johnson* and *Welch*, Degeare insisted, only his 2003 conviction for possession with intent to distribute remains an ACCA predicate, thus rendering the ACCA's sentencing enhancement inapplicable. *See* § 924(e)(1) (requiring at least "three previous convictions . . . for a violent felony or a serious drug offense" to trigger enhancement).

3

The government didn't dispute that Degeare's 1990 forcible-sodomy conviction and 1994 lewd-molestation conviction no longer qualify as ACCA predicates after *Johnson* and *Welch*. But it maintained that Degeare nevertheless isn't entitled to relief. In support, it asserted that although Degeare's two 1994 convictions for forcible sodomy no longer trigger the enhancement under the ACCA's now-defunct *residual* clause, *see* § 924(e)(2)(B)(ii), those convictions are for offenses that nevertheless remain violent felonies under the ACCA's *elements* clause, *see* § 924(e)(2)(B)(i) (defining violent felony, in relevant part, as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"); *Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question . . . the remainder of the [ACCA's] definition of a violent felony."). Accordingly, the government maintained, Degeare continues to have three convictions for violent felonies or serious drug offenses, thus rendering harmless any *Johnson* error the sentencing court committed by relying on the ACCA's residual clause.

The district court agreed. First, it concluded that Oklahoma's forcible sodomy statute is divisible because it describes three separate offenses. Second, it determined that Degeare specifically pleaded guilty to violating § 888(B)'s third subsection, which prohibits "sodomy accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the victim or the person committing the crime." § 888(B)(3). Finally, it ruled that this particular subsection of Oklahoma's forcible-sodomy statute constitutes a violent felony

4

under § 924(e)(2)(B)(i)'s elements clause, thus rendering harmless any *Johnson* error. Accordingly, the district court denied Degeare's § 2255 motion. Degeare appeals.

**Analysis**

We review de novo the district court's conclusion that Degeare's 1994 convictions for forcible sodomy constitute ACCA predicates. *See United States v. Ridens*, 792 F.3d 1270, 1272 (10th Cir. 2015). In arguing they do not, Degeare advances four separate arguments. But to resolve this appeal, we need address only one: his assertion that § 888 isn't divisible.

The parties disagree on this point. But before we resolve their disagreement, it's worth noting a few areas where the parties' positions overlap. First, neither party disputes that Degeare is only subject to the ACCA's sentencing enhancement if he has at least three prior convictions for violent felonies or serious drug offenses. *See* § 924(e)(1). Likewise, the parties agree that (1) Degeare's 2003 conviction for possession with intent to distribute constitutes an ACCA predicate and (2) his 1990 forcible-sodomy conviction and his 1994 lewd-molestation conviction do not. Finally, the parties agree that if § 888 isn't divisible, then Degeare's 1994 convictions for forcible sodomy don't constitute ACCA predicates—a conclusion that would require us to reverse the district court's order denying his § 2255 motion. In other words, the parties agree that if we conclude § 888 isn't divisible, that conclusion is dispositive of this appeal.

To understand why the parties agree on this last point, some background information is helpful. As explained above, Degeare is only subject to the ACCA's sentencing enhancement if his 1994 convictions for forcible sodomy constitute violent

5

felonies under the elements clause. And in determining whether an offense constitutes a violent felony under the ACCA's elements clause, courts use one of two methods: (1) the pure categorical approach or (2) the modified categorical approach. Under the pure categorical approach, we examine the statute—and only the statute—and ask whether "it can be violated without the 'use, attempted use, or threatened use of physical force.'" *Titties*, 852 F.3d at 1273 (quoting § 924(e)(2)(B)(i)). If so, "then any conviction under that statute will not count toward an ACCA enhancement" under the elements clause. *Id.* at 1265; *see also United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017) (explaining that "we look to the least of the acts criminalized by" statute of conviction in determining whether that statute "reaches any conduct" that doesn't satisfy § 924(e)(2)(B)(i)), *cert. denied*, No. 17-6850, 2018 WL 311855 (U.S. Jan. 8, 2018).

This pure categorical approach applies to statutes that aren't divisible, i.e., those that contain "a single, indivisible set of elements." *Descamps v. United States*, 570 U.S. 254, 258 (2013). But if the statute in question is divisible, i.e., if it "contains more than one crime," then we instead apply the modified categorical approach. *Titties*, 852 F.3d at 1265. Unlike the pure categorical approach, the modified categorical approach doesn't begin and end solely with our examination of the relevant statute. Instead, "[t]he modified categorical approach allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense" to determine which of the statute's alternative crimes the defendant was actually convicted of committing. *Id.* at 1266. Once we make that threshold determination, we can then apply the categorical approach to the relevant statutory alternative. *See id.* at 1266–67. That is,

6

we can then ask whether the crime defined by that specific statutory alternative "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i); *see also Descamps*, 570 U.S. at 257 (explaining that once court "determine[s] which alternative [offense] formed the basis of the defendant's prior conviction," it "can then do what the categorical approach demands"); *United States v. Pam*, 867 F.3d 1191, 1206–07 (10th Cir. 2017) (concluding that statute of conviction was divisible; looking to record documents to discern which of statute's alternative offenses formed basis of defendant's convictions; and then asking whether those particular alternatives satisfy elements clause).

Here, Degeare pleaded guilty to two counts of forcible sodomy, which Oklahoma defined at the relevant time as:

> 1. sodomy committed by a person over [18] years of age upon a person under [16] years of age; or
>
> 2. sodomy committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent regardless of the age of the person committing the crime; or
>
> 3. sodomy accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the victim or the person committing the crime.

§ 888(B)(1)–(3).

The government concedes that, under the pure categorical approach, § 888(B) doesn't satisfy the elements clause. This is so, the government says, because neither § 888(B)(1) nor § 888 (B)(2) "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i); *see also Titties*, 852

7

F.3d at 1265 (explaining that, under categorical approach, "[i]f some conduct that would be a crime under the statute would not be a violent felony under the ACCA, then any conviction under that statute will not count toward an ACCA enhancement").

In light of this concession, we will only affirm the district court's order denying Degeare's § 2255 motion if the government demonstrates that (1) § 888(B) is divisible; (2) Degeare's forcible sodomy convictions arose under § 888(B)(3); and (3) § 888(B)(3) satisfies the elements clause. *See United States v. Garcia*, 877 F.3d 944, 948 (10th Cir. 2017) (discussing government's burden to demonstrate that *Johnson* error was harmless); *Titties*, 852 F.3d at 1272 n.19 (citing government's burden to prove that prior conviction constitutes ACCA predicate). Thus, we turn first—and, as it so happens, last—to the divisibility question. *See Titties*, 852 F.3d at 1267 (stating that modified categorical approach "has no role to play" if statute isn't divisible (quoting *Descamps*, 570 U.S. at 264)).

## I.     Divisibility and the *Mathis* Toolbox

A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 136 S. Ct. at 2249. Elements, in turn, "are what the jury must find beyond a reasonable doubt to convict the defendant" or "what the defendant necessarily admits when he [or she] pleads guilty." *Id.* at 2248. Critically, not all statutory alternatives are elements. Instead, some statutes merely "enumerate[] various factual means of committing a single element." *Id.* at 2249. And if a statute's alternatives are merely means, as opposed to elements, then the statute isn't divisible and the modified categorical approach doesn't apply. *See id.* at 2253, 2256 (holding that lower court erred

8

in applying modified categorical approach to statute that contained only alternative means and therefore wasn't divisible).

Here, neither party disputes that the applicable statute comprises three alternatives. It defines forcible sodomy as:

> 1. sodomy committed by a person over [18] years of age upon a person under [16] years of age; or
>
> 2. sodomy committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent regardless of the age of the person committing the crime; or
>
> 3. sodomy accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the victim or the person committing the crime.

§ 888(B)(1)–(3). But the parties disagree about whether these alternatives constitute elements—things a "jury must find beyond a reasonable doubt to convict [a] defendant" of forcible sodomy at trial, *Mathis*, 136 S. Ct. at 2248—or whether they instead constitute means—"various factual ways of committing some component of" forcible sodomy that "a jury need not find" or, alternatively, that a defendant who pleads need not admit, *id.* at 2249.

In deciding whether a state statute's alternatives are elements or means, we have several tools at our disposal. First, a state-court decision may "definitively answer[] the question." *Id.* at 2256; *see also id.* (concluding that statutory alternatives were means rather than elements because state-court decision characterized them as "'alternative method[s]' of committing one offense, so that a jury need not agree" on which one

applies (alteration in original) (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981))).

Second, "the statute on its face may resolve the issue." *Id.* For instance, "[i]f statutory alternatives carry different punishments, then under [*Apprendi v. New Jersey*, 530 U.S. 466 (2000)] they must be elements." *Mathis*, 136 S. Ct. at 2256. "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). And sometimes, the statute itself will "identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.*

Third, if these sources of state law—the statute itself and any state-court decisions interpreting it—don't "provide clear answers," then we "have another place to look: the record of a prior conviction itself." *Id.* For instance, if the indictment and jury instructions reiterate all of the statutory alternatives, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term." *Id.* at 2257. "Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

According to *Mathis*, employing these tools should make answering the elements-or-means question "easy." *Id.* at 2256. Between the record documents and state law, *Mathis* assures us, "indeterminacy should prove more the exception than the rule." *Id.* at 2257. But on the off chance that a clear answer to the means-or-elements question

10

remains elusive, *Mathis* makes it clear what we must do—or, more precisely, what we must *not* do: If "state law fails to provide clear answers" and the "record materials [don't] speak plainly," then we won't be "able to satisfy '[*Taylor v. United States*, 495 U.S. 575 (1990)]'s demand for certainty.'" *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)). And in the absence of such certainty, we can't treat an offender's prior conviction as an ACCA predicate. *See Titties*, 852 F.3d at 1268 (noting that "we must be 'certain' the prior conviction 'necessarily' qualifies under the ACCA to apply the enhancement" (quoting *Huizar*, 688 F.3d at 1195)). In other words, unless we are certain that a statute's alternatives are elements rather than means, the statute isn't divisible and we must eschew the modified categorical approach.[1]

## A.    The State-Court Decision

Degeare argues we need only employ the first of these tools here because a state-court decision "definitively" establishes that § 888(B)'s alternatives are means, rather than elements. *Mathis*, 136 S. Ct. at 2256. In support, Degeare cites *Bruner v. State*, 612 P.2d 1375 (Okla. Crim. App. 1980).

_____

[1] We haven't yet resolved what quantum of certainty *Taylor* requires. At some point, we may well be presented with a close case in which the answer to that question will prove determinative. But this isn't such a case. Thus, in the absence of any briefing by either party, we decline to answer this question here. Instead, we hold only that *Taylor* requires us to be *at least* more certain than not that a statute's alternatives constitute elements before we will treat that statute as divisible. In other words, if the evidence is merely in equipoise, the modified categorical approach won't apply. Requiring anything less would be inconsistent with the Court's language in *Mathis*. *See* 136 S. Ct. at 2256–57 (allowing court to treat state statute as divisible only if state law or record documents "definitively," "clear[ly]," and "plainly" establish that statute's alternatives are elements; indicating that where answer to means-or-elements question is instead "indetermin[ate]," courts cannot "satisfy '*Taylor*'s demand for certainty" (quoting *Shepard*, 544 U.S. at 21)).

In *Bruner*, the defendant was charged with rape "under conjunctive theories: (1) that the [victim] was under the age of sixteen and (2) that the act occurred by means of force, overcoming her resistance and (3) [that the act occurred] by means of threats of immediate injury and great bodily harm, accompanied by apparent power of execution." *Id.* at 1380; *see also* Okla. Stat. Ann. tit. 21, § 1111 (1971) (defining rape, in relevant part, as sexual intercourse with a victim where (1) the victim "is under the age of [16] years"; (2) the victim's "resistance is overcome by force and violence"; or (3) the victim "is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution"); Okla. Stat. Ann. tit. 21, § 1114 (1971) (classifying first of these alternatives as second-degree rape and second and third of these alternatives as first-degree rape).

On appeal, the defendant challenged his conviction, asserting that "he was denied due process of law and may have been convicted under a nonunanimous verdict." *Bruner*, 612 P.2d at 1379–80. In advancing the latter contention, the defendant argued that because the jury instructions set forth the "theories of guilt . . . in the disjunctive," it was "conceivable . . . that the jury could have found him guilty without unanimously finding him guilty of each and every element necessary to the crime beyond a reasonable doubt." *Id.* at 1380. In other words, he argued that some jurors might have found him guilty under § 1111's first subsection (because they believed that he engaged in "an act of sexual intercourse" with a victim who was "under the age of [16] years"), while others might have found him guilty under § 1111's fourth subsection (because they believed that he did so where his victim "resist[ed] but her resistance [was] overcome by force and

12

violence"), and still others might have found him guilty under § 1111's fifth subsection (because they believed that he did so "by threats of immediate and great bodily harm, accompanied by apparent power of execution"). § 1111(1st), (4th), (5th).

The Oklahoma Court of Criminal Appeals (OCCA) rejected the defendant's jury-unanimity argument, as well as his due-process argument. In doing so, it reasoned that although rape can "be accomplished in *different ways*," it is nevertheless "only a *single crime*" under Oklahoma law. *Bruner*, 612 P.2d at 1380 (emphases added) (citing *Huckleberry v. State*, 81 P.2d 493, 495 (Okla. Crim. App. 1938)). Thus, the OCCA concluded, when the state alleges that a defendant committed rape by engaging in sexual intercourse with a victim under the age of 16 *and* by force *and* by threats, the government must only present sufficient evidence of any one of these "theories of guilt" to support a conviction for the "single crime" of rape. *Id.*

In short, *Bruner* holds that (1) these statutory alternatives are merely "different ways" of committing "a single crime" and (2) a jury need not unanimously agree on any particular one of these statutory alternatives to convict. *Id.* And when a state-court decision "of that kind exists," it "definitively" establishes that the statutory alternatives are means, rather than elements. *Mathis*, 136 S. Ct. at 2256; *see also id.* (concluding that statutory alternatives were means based on state-court decision holding that those alternatives were merely "'alternative method[s]' of committing one offense" and that "a jury need not agree" on which one applies (alteration in original) (quoting *Duncan*, 312 N.W.2d at 523)).

13

Citing the similarities between § 888(B) and the statutes at issue in *Bruner*, Degeare argues that § 888(B)'s statutory alternatives must therefore be means as well. The government disagrees, insisting that *Bruner* isn't the silver bullet Degeare makes it out to be. In support, the government advances three arguments.

The government first points out the obvious: Degeare was convicted of forcible sodomy, not rape. And because *Bruner* addresses only Oklahoma's rape statutes, the government asserts, it doesn't control here.

In light of this distinction, we agree that *Bruner* doesn't "definitively answer[]" the means-or-elements question in this case.[2] *Mathis*, 136 S. Ct. at 2256. But this hardly dooms *Bruner* to irrelevancy. After all, the OCCA "has long recognized the analogy between sodomy and rape." *Hopper v. State*, 302 P.2d 162, 165 (Okla. Crim. App. 1956); *see also Kimbro v. State*, 857 P.2d 798, 799 (Okla. Crim. App. 1990) ("[T]he principles of law applicable to rape apply to sodomy . . . ."); *Hill v. State*, 368 P.2d 669, 671 (Okla. Crim. App. 1962) (acknowledging analogy between rape and sodomy and explaining that legal principles that apply to former also apply to latter). And even if it hadn't, we would draw that same analogy based on the similarities between the rape statutes at issue in *Bruner* and the sodomy statute at issue here. *Compare* § 1111 (defining rape, in relevant part and in different subsections, as rape of a victim "under the age of sixteen years"; of a victim "incapable through lunacy or any other unsoundness of mind, whether temporary

---

[2] For this reason, we need not address Degeare's suggestion that when a state-court decision *does* appear to "definitively answer[]" the means-or-elements question, *Mathis*, 136 S. Ct. at 2256, "the analysis ends" and we can't employ the other *Mathis* tools, Rep. Br. 5.

14

or permanent, of giving legal consent"; of a victim whose "resistance is overcome by force and violence"; or of a victim who is "prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution"), *and* § 1114 (classifying as first-degree rape any rape by an offender "over [18] years of age upon a [victim] under the age of [14]"; of a victim "incapable through lunacy or unsoundness of mind of giving legal consent"; "by means of force overcoming [the victim's] resistance"; or "by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, preventing such resistance"), *with* § 888(B) (defining forcible sodomy, in relevant part and in different subsections, as sodomy "committed by a person over [18] years of age upon a person under [16] years of age"; "committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent"; or "accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution").

In short, under the relevant versions of the Oklahoma statutes at issue, a defendant can commit either rape or forcible sodomy by engaging in a particular sex act (1) with a victim under a certain age; (2) with a victim whose mental illness or unsoundness of mind renders the victim incapable of giving legal consent; (3) by force; or (4) by credible threat of force. And the government makes no effort to explain why the OCCA would treat these similar statutory alternatives as means in one context and elements in another. Accordingly, we see no reason to think the OCCA wouldn't extend *Bruner*'s analysis of § 1111 and § 1114 to § 888(B). *See Hill*, 368 P.2d at 671. Thus, the government's first argument fails.

15

Second, even assuming that *Bruner*'s holding extends to § 888(B), the government insists that this holding is nevertheless of limited value here. That's because, according to the government, *Bruner* doesn't actually establish that "the alternative methods of commiting [sic] rape [are] means as opposed to elements." Aplee. Br. 23. In support, the government advances a two-part argument. First, it insists that the OCCA resolved the defendant's argument in *Bruner* based solely on due-process principles. Second, it asserts that to the extent *Bruner* says anything about jury unanimity, that discussion isn't dispositive of the means-or-elements question.

We disagree with the government's cramped reading of *Bruner*. True, the OCCA focused primarily on the defendant's due-process argument. But it unambiguously acknowledged (1) that the defendant was also raising a jury-unanimity argument, *see Bruner*, 612 P.2d at 1380 ("It is conceivable, the appellant maintains, that the jury could have found him guilty without unanimously finding him guilty of each and every element necessary to the crime beyond a reasonable doubt."), and (2) that the jury instructions indeed presented the alternative "theories of guilt . . . in the disjunctive," *id.*

Moreover, the OCCA rejected the defendant's entire "fifth assignment of error," which included both the defendant's due-process argument *and* his jury-unanimity argument. *Id.* at 1379–80. And critically, the OCCA did so without ever suggesting that it had any reason to think the jurors were, in fact, unanimous as to the specific statutory alternative or alternatives that applied. *Id.* Thus, we can only conclude that the OCCA rejected the defendant's unanimity argument because the court instead determined that such unanimity wasn't required in the first place—a conclusion that flows naturally from

16

the OCCA's holding that the alternatives at issue were simply "different ways" (or means) of committing the "single crime" of rape. *Id.* at 1380; *see also Blackwell v. State*, 663 P.2d 12, 16 (Okla. Crim. App. 1983) ("The unanimity guaranteed by the [Oklahoma Constitution] is required only with respect to the ultimate issue of the appellant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed."). Thus, we reject the government's invitation to elide *Bruner*'s jury-unanimity analysis.

Finally, we also reject the government's third challenge to Degeare's *Bruner* argument—that to the extent *Bruner* contains a jury-unanimity analysis, that analysis isn't dispositive of the means-or-elements question. On the contrary, *Mathis* makes jury unanimity the touchstone of the means-or-elements inquiry.

First, in illustrating the distinction between these two concepts, *Mathis* describes a hypothetical statute that requires using a deadly weapon but "spells out various factual ways of committing [that] component of the offense," e.g., using a knife, gun, or bat. 136 S. Ct. at 2249. Because "[a] jury could convict" a defendant under this hypothetical statute "even if some jurors 'conclude[d] that the defendant used a knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon,'" *Mathis* explains, these alternatives constitute "legally extraneous circumstances"—i.e., means. *Id.* (alterations in original) (first quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999); then quoting *Descamps*, 570 U.S. at 270). Next, *Mathis* goes on to apply the distinction illustrated by this hypothetical to the real-world question before the Court: it holds that the

17

statutory alternatives at issue constitute means rather than elements precisely because a state-court decision establishes that those alternatives are merely different ways "of committing one offense, *so that a jury need not agree*" on one or more of those alternatives to convict.[3] *Id.* at 2250, 2256 (emphasis added).

Taking our cue from *Mathis*, we have likewise adopted a unanimity-focused approach to the means-or-elements question. *See, e.g.*, *United States v. Burtons*, 696 F. App'x 372, 378 n.3 (10th Cir. 2017) (unpublished) (citing *Mathis* for proposition that "where jury unanimity isn't required, statutory alternatives constitute means, not elements"); *Titties*, 852 F.3d at 1270 ("[B]ut it is not clear whether [the statutory alternatives] are different means to commit the same crime or whether they define different crimes *such that a jury would have to agree on a particular alternative to convict*." (emphasis added)); *Titties*, 852 F.3d at 1271 (noting that structure of applicable jury instruction didn't "suggest the jury would have to agree on a particular alternative," thus indicating that alternatives were means rather than elements). And our sister circuits have done the same. *See, e.g., United States v.*

---

[3] The government also suggests that *Mathis*' jury-unanimity test doesn't apply when the statutory alternatives "are separately listed as elements in jury instructions." Aplee. Br. 26. But this reasoning is circular: whether the statutory alternatives are "listed *as elements*," *id.* (emphasis added), is the question—not the divining rod we use to answer it. Moreover, we know of no authority that treats alternatives as elements (regardless of how they appear in a particular jury instruction) in the face of a binding state-court decision holding that a jury need not unanimously agree on one or more of them to convict. *See Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017) (explaining that in resolving matters of state law, federal courts "must defer to the most recent decisions of the state's highest court" (quoting *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010))). Accordingly, we decline to recognize such an exception to *Mathis*' unanimity rule.

18

*Robinson*, 869 F.3d 933, 940 (9th Cir. 2017); *United States v. McMillan*, 863 F.3d 1053, 1057 (8th Cir. 2017); *United States v. Starks*, 861 F.3d 306, 316 (1st Cir. 2017); *Harbin v. Sessions*, 860 F.3d 58, 66, 67 (2d Cir. 2017); *United States v. Lynn*, 851 F.3d 786, 796 (7th Cir. 2017); *United States v. Steiner*, 847 F.3d 103, 119 (3d Cir. 2017); *United States v. Gundy*, 842 F.3d 1156, 1163 (11th Cir. 2016), *cert. denied*, 138 S. Ct. 66 (2017); *United States v. Howell*, 838 F.3d 489, 498 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1108 (2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

Accordingly, *Bruner*'s conclusion that a jury need not unanimously agree on the statutory "way[]" or "ways" in which a particular defendant "accomplished" the "single crime" of rape, 612 P.2d at 1380, "definitively" resolves that the statutory alternatives at issue in *Bruner* are means rather than elements, *Mathis*, 136 S. Ct. at 2256. And given the similarities between those statutory alternatives and the statutory alternatives at issue here, we conclude that *Bruner* weighs heavily in favor of treating § 888(B)'s alternatives as means too. Nevertheless, because *Bruner* doesn't "definitively" resolve the means-or-elements question in this case, *Mathis*, 136 S. Ct. at 2256, we turn next to the other tools in the *Mathis* toolbox: the statutory language and the records underlying Degeare's convictions, *see id.*; *Titties*, 852 F.3d at 1272 n.19 ("*Mathis* unambiguously instructs federal courts to settle, if possible, the means/elements issue when applying the ACCA even if there is no on-point state decision.").[4]

---

[4] Again, we need not resolve whether, when a state-court decision *does* appear to "definitively" establish that statutory alternatives are means, *Mathis*, 136 S. Ct.

**B.     The Statute Itself**

*Mathis* lists three ways in which a "statute on its face may resolve" the means-or-elements question. 136 S. Ct. at 2256. None of them resolve that question here. First, § 888(B)'s alternatives don't "carry different punishments," such that they must be elements under *Apprendi*. *Mathis*, 136 S. Ct. at 2256. On the contrary, § 888's penalty provision—which is tethered solely to § 888(A)—states that "[a]ny person who forces another person to engage in the detestable and abominable crime against nature . . . is guilty of a felony punishable by . . . not more than [20] years" in prison." § 888(A). Nor is § 888(B) necessarily "drafted to offer 'illustrative examples,'" which would indicate that its alternatives are means.[5] *Mathis*, 136 S. Ct. at 2256 (quoting *Howard*, 742 F.3d at 1348). Likewise, § 888(B) doesn't "itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.*

Going beyond the statutory characteristics that *Mathis* treats as relevant, the government asserts that because § 888(B)'s alternatives appear in three separate subsections, they must be elements. In support, it cites *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 1214 (2017), where we

at 2256, we may nevertheless look to the face of the statute itself or the record documents to answer the means-or-elements question. But we note that the *Mathis* Court didn't take this approach: its inquiry started and stopped with a state-court decision that held the relevant alternatives were means. *See id.*

[5] One could plausibly argue that, by stating "forcible sodomy . . . *include*[*s*]" the statutory alternatives at issue here, § 888(B) (emphasis added), § 888 provides a "non-exhaustive list" of "illustrative examples [that] are not alternative elements." *Howard*, 742 F.3d at 1348; *see also Mathis*, 136 S. Ct. at 2256. But because Degeare expressly concedes that it's not clear from the face of the statute that § 888(B)'s alternatives are merely "illustrative examples," *Howard*, 742 F.3d at 1348, we decline to address this possibility.

20

opined, "New Mexico's aggravated assault statute is a divisible statute because it sets out alternative elements for aggravated assault in three subsections." *Id.* at 1247.

The government mischaracterizes *Maldonado-Palma*. There, we didn't rely on the fact that the statutory alternatives appeared in *separate subsections* to conclude that they were *elements*. Instead, we relied on the fact that those statutory alternatives were *elements*—as established by a state-court decision indicating as much—to conclude that the statute was *divisible*. *See id.* (citing *State v. Armijo*, 104 P.3d 1114, 1120 (N.M. Ct. App. 2004)). Moreover, it doesn't appear that the defendant in *Maldonado-Palma* even argued on appeal that the statute at issue there *wasn't* divisible. Instead, he argued that even assuming the statute was divisible and the modified categorical approach therefore applied, the government failed to produce any documents that might "demonstrate which of the three possible forms of assault . . . supported the basis of [his] conviction." Brief for Appellant, *Maldonado-Palma*, 839 F.3d 1244 (No. 15-2146), 2015 WL 7565593, at *28. Thus, it doesn't appear that the means-or-elements question was ever at issue there.

In any event, as *Bruner* makes clear, the fact that § 888(B)'s alternatives appear in different subsections doesn't demonstrate that they're elements. One of the rape statutes at issue in *Bruner* set forth its alternatives in separate subsections, and yet the OCCA held that those alternatives were means. *See* § 1111 (listing alternative definitions of rape in separate subsections); *Bruner*, 612 P.2d at 1380 (holding that jury need not agree on particular statutory alternative to convict defendant of rape). Similarly, Oklahoma's first-degree-murder statute lists malice-aforethought murder and felony murder in separate

21

subsections of a single statute, *see* Okla. Stat. Ann. tit. 21, § 701.7, and yet a jury need not unanimously agree on one alternative or the other to convict, *see Crawford v. State*, 840 P.2d 627, 640 (Okla. Crim. App. 1992) (describing these alternatives as different "factual bas[e]s" on which jury need not unanimously agree; explaining that jury must only be unanimous as to whether defendant committed "single crime" of "first[-]degree murder"), *overruled on other grounds by Malone v. State*, 168 P.3d 185 (Okla. Crim. App. 2007).

Because nothing on the statute's "face" answers the means-or-elements question, *Mathis*, 136 S. Ct. at 2256, we turn to the documents underlying Degeare's convictions. *See id.* at 2257 ("And if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself."). But before we do, we pause to recap. First, we will only treat § 888(B) as divisible if we are at least more certain than not that its alternatives are elements. *See supra* note 1. Second, *Bruner* strongly suggests that § 888(B)'s alternatives are means. Third, nothing "on [the] face" of § 888(B) suggests otherwise. *Mathis*, 136 S. Ct. at 2256. Thus, in light of *Bruner*, we will only treat § 888(B) as divisible if the record documents "plainly" indicate that its alternatives are elements. *Id.* at 2257 (explaining that when "record materials" don't "speak plainly," we will be unable "to satisfy '*Taylor*'s demand for certainty'" (quoting *Shepard*, 544 U.S. at 21)).

## C.     The Record Documents

*Mathis* lists three ways in which record documents can "speak plainly" as to whether statutory alternatives constitute means or elements. *Id.* First, if the charging

22

document or jury instructions "reiterat[e] all the [statutory alternatives]," this "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* Second, the same is true if the charging document or jury instructions "use a single umbrella term." *Id.* Third, "an indictment and jury instructions could indicate, by" instead "referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* We begin by applying these principles to the relevant jury instructions and then discuss the charging documents.[6]

### 1. The Jury Instructions

The current version of Oklahoma's Uniform Jury Instructions provides, in relevant part, the following instruction for forcible sodomy:

> No person may be convicted of forcible oral sodomy unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>
> First, penetration;
>
> Second, of the **mouth/vagina** of the **defendant/victim**;
>
> Third, by the **mouth/penis** of the **defendant/victim**;

---

[6] Because Degeare didn't go to trial, there was no jury and hence there were no jury instructions. Nevertheless, "the state's uniform jury instructions can provide insight into the means/elements question." *Titties*, 852 F.3d at 1270 n.15.

In *Titties*, we indicated that "Oklahoma's Uniform Jury Instructions provide[d] an additional source of *state law guidance*." *Id.* at 1270 (emphasis added). We do not depart from that characterization here. We simply opt to analyze the relevant uniform instructions alongside the relevant charging documents because *Mathis* indicates the same analysis applies to both. *See* 136 S. Ct. at 2257.

[Fourth, which is accomplished by means of force or violence, or threats of force or violence that are accompanied by the apparent power of execution.]

You are further instructed that any sexual penetration, however slight, is sufficient to complete the crime.

**OR**

[Fourth, by a person over the age of eighteen on a child under the age of sixteen.]

You are further instructed that any sexual penetration, however slight, is sufficient to complete the crime.

**OR**

[Fourth, committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent].

You are further instructed that any sexual penetration, however slight, is sufficient to complete the crime.

Okla. Unif. Jury Instr. CR 4-128.[7]

---

[7] As Degeare points out, it doesn't appear that Oklahoma had a uniform sodomy instruction at the time of his conviction. And we question whether the current version of the instruction—whatever it might have to say about the current status of the law—could possibly "speak plainly" as to whether Oklahoma treated § 888(B)'s alternatives as means or elements at the time of Degeare's conviction. *See United States v. Starks*, 861 F.3d 306, 317 (1st Cir. 2017) (recognizing that "state laws can change over time" and holding that, "[i]n the ACCA context . . . the relevant question is whether the crime was divisible at the time of the defendant's prior conviction"); *United States v. Seabrooks*, 839 F.3d 1326, 1348 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2265 (2017) ("If the state statute was divisible *at the time the defendant was convicted of violating it*, and if at least one but not all of the different crimes created by the statute count as violent felonies under the ACCA's elements clause, then [court will apply modified categorical approach]." (emphasis added)). But we need not resolve this question; even assuming that we may rely on the current version of the instruction, it doesn't plainly indicate that § 888(B)'s alternatives are elements.

In arguing that this instruction indicates § 888(B)'s alternatives are elements, the government first points to the "Notes on Use" following the instruction; those notes expressly state that a "trial court should select the Fourth *Element* that is supported by the evidence." Okla. Unif. Jury Instr. CR 4-128 notes on use (emphasis added). But simply calling a statutory alternative an element doesn't make it so. *Cf. Mathis*, 136 S. Ct. at 2251 ("The label a State assigns to a crime—whether 'burglary,' 'breaking and entering,' or something else entirely—has no relevance to whether that offense is an ACCA predicate."). This much is clear from the fact that the "Notes on Use" following Oklahoma's first-degree-rape instruction likewise refer to § 1111's alternatives— alternatives that *Bruner* establishes are actually means, 612 P.2d at 1380—as "element[s]." Okla. Unif. Jury Instr. CR 4-120 notes on use.[8] Thus, the "Notes on Use" following Okla. Unif. Jury Instr. CR 4-128 don't plainly indicate that § 888(B)'s alternatives are elements.

Next, the government argues that by setting forth § 888(B)'s alternatives in separate subsections of the instruction, rather than "bunch[ing them] together," the instruction indicates that Oklahoma treats § 888(B)'s statutory alternatives as elements. *See Titties*, 852 F.3d at 1271 ("The instruction bunches together the statutory purpose alternatives into a single element. It does not suggest the jury would have to agree on a particular alternative to satisfy the fifth element.").

---

[8] Consistent with the government's reliance on the current version of Okla. Unif. Jury Instr. CR 4-128, we cite the current version of Okla. Unif. Jury Instr. CR 4-120 as well.

25

But Oklahoma's first-degree-rape instruction likewise doesn't "bunch[] together" § 1111's statutory alternatives. *Id.* Instead, like Oklahoma's uniform forcible-sodomy instruction, Oklahoma's uniform rape instruction sets forth the relevant alternatives separately and divides them by "OR." *Compare* Okla. Unif. Jury Instr. CR 4-128, *with* Okla. Unif. Jury Instr. CR 4-120. Nevertheless, the OCCA has held that those alternative ways of committing rape are means rather than elements. *Bruner*, 612 P.2d at 1380. Moreover, although Oklahoma's forcible sodomy statute doesn't "bunch[] together" the statutory alternatives at issue here, *Titties*, 852 F.3d at 1271, neither does it provide wholly separate instructions for each of those alternatives, *cf. Pam*, 867 F.3d at 1205 (holding that statutory alternatives were elements rather than means where New Mexico provided "three separate and distinct instructions"—one for each of statute's three alternatives); *Burtons*, 696 F. App'x at 379 (holding that statutory alternatives were elements rather than means where Oklahoma provided separate jury instruction for each statutory alternative).

Finally, the "Notes on Use" following Oklahoma's forcible-sodomy instruction do indicate that a trial court should select the § 888(B) alternative "that is supported by the evidence" in a particular case. Okla. Unif. Jury Instr. CR 4-128 notes on use. And this could arguably suggest that those alternatives are elements. *See Mathis*, 136 S. Ct. at 2257 ("[J]ury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime."). But the "Notes on Use" don't expressly preclude a trial court from instructing the jury on more than one (or even all) of § 888(B)'s alternatives if the

evidence warrants such an instruction. Okla. Unif. Jury Instr. CR 4-128 notes on use. Nor do they prohibit the trial court, in that scenario, from "bunch[ing] together" those statutory alternatives "into a single element." *Titties*, 852 F.3d at 1271; *see also Mathis*, 136 S. Ct. at 2257 (explaining that when jury instruction "reiterat[es] all" of statute's alternatives, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt"). Accordingly, we reject the government's assertion that the jury instructions "'plainly' treat the alternatives as elements, not means." Aplee. Br. 21 (quoting *Mathis*, 136 S. Ct. at 2257).

### 2.     The Charging Documents

*Mathis* leaves us with one final avenue for determining whether statutory alternatives constitute means or elements: examination of the charging document. 136 S. Ct. at 2257. If the charging document reiterates all the statutory alternatives, that indicates those alternatives are means. But if it instead "referenc[es] one alternative term to the exclusion of all others, that [indicates] the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

Here, the government points out, the charging document alleges that Degeare "forcibly put[] his penis inside [one of the victim's] mouths" and "forc[ed]" the other victim "to place his penis inside [her] mouth." R. vol. 1, 123. Thus, the government concludes, the charging document references only a single § 888(B) alternative "to the

exclusion of all others," *Mathis*, 136 S. Ct. at 2257: "sodomy accomplished with any person by means of force," § 888(B)(3).[9]

We agree this is one plausible interpretation of the charging document. But it's not the only one. As Degeare points out, the term "force" (and its variations) don't appear solely in § 888(B)(3). Instead, (1) the title of § 888 itself refers to "[f]orcible sodomy"; (2) § 888(A) states that "[a]ny person who *forces* another person to engage in the detestable and abominable crime against nature, . . . upon conviction, is guilty of a felony punishable by imprisonment in the penitentiary for a period of not more than [20] years"; (3) § 888(B) states that "[t]he crime of *forcible* sodomy shall include" certain acts; and (4) § 888(B)(3) refers to "sodomy accomplished . . . by means of *force*." § 888 (emphases added).

---

[9] We reproduce the language of Count 1 and Count 2 below:

```
COUNT  1: ON OR ABOUT THE 15TH DAY OF OCTOBER,  1993,  A.D., THE CRIME OF
          FORCIBLE ORAL SODOMY WAS FELONIOUSLY COMMITTED IN OKLAHOMA COUNTY,
          OKLAHOMA, BY JOSEPH RICHARD DEGEARE III WHO WILFULLY, UNLAWFULLY AND
          FELONIOUSLY COMMITTED THE DETESTIBLE AND ABOMINABLE CRIME AGAINST
          NATURE WITH ONE ███████████████ BY HAVING UNNATURAL CARNAL COPULATION
          BY MOUTH WITH ███████████████ BY FORCING HER TO PLACE HIS PENIS INSIDE
          █████████████████'S MOUTH,  CONTRARY TO THE PROVISIONS OF SECTION 886 AND
          888 OF TITLE 21 OF THE OKLAHOMA STATUTES, AND AGAINST THE PEACE AND
          DIGNITY OF THE STATE OF OKLAHOMA;


COUNT  2: ON OR ABOUT THE 15TH DAY OF OCTOBER,  1993,  A.D., THE CRIME OF
          FORCIBLE ORAL SODOMY WAS FELONIOUSLY COMMITTED IN OKLAHOMA COUNTY,
          OKLAHOMA, BY JOSEPH RICHARD DEGEARE III WHO WILFULLY, UNLAWFULLY AND
          FELONIOUSLY COMMITTED THE DETESTIBLE AND ABOMINABLE CRIME AGAINST
          NATURE WITH ONE ████████████ BY HAVING UNNATURAL CARNAL COPULATION BY
          MOUTH WITH ████████████ BY FORCIBLY PUTTING HIS PENIS INSIDE ███████
          █████'S MOUTH,  CONTRARY TO THE PROVISIONS OF SECTION 886 AND 888 OF
          TITLE 21 OF THE OKLAHOMA STATUTES, AND AGAINST THE PEACE AND DIGNITY
          OF THE STATE OF OKLAHOMA;
```

28

Thus, it's not at all clear to us that in alleging Degeare committed "forcible oral sodomy" against one of his victims "by *forcing* her to place his penis inside [her] mouth" and against his other victim by "by *forcibly* putting his penis inside [her] mouth," the charging document necessarily and specifically invokes § 888(B)(3). R. vol. 1, 123 (emphases added). Instead, it's possible that each charge's first use of the term is merely a nod to the name of the offense charged, while its second reference is—as Degeare argues—an effort to rope in the language of § 888(A). And in that case, Degeare points out, the language of the charging document arguably indicates (by failing to charge a specific § 888(B) alternative) that § 888(B)'s alternatives are simply "diverse means of satisfying [§ 888(A)'s] single [force] element." *Mathis*, 136 S. Ct. at 2249; *see also id.* (explaining that when statute's alternatives are merely "various factual ways of committing some component of the offense," those "ways" constitute means, not elements); *id.* at 2256 (distinguishing between elements, "which . . . must be charged" and means, "which need not be").[10]

The government also points out that the charging document for Degeare's 1990 forcible-sodomy conviction specifically alleges only the age of the victim, rather than using the term "force."[11] And according to the government, this demonstrates that § 888(B)'s alternatives are elements. Again, we agree this is one plausible interpretation.

---

[10] True, the charging document uses the phrases "*by* forcing her" and "*by* forcibly." R. vol. 1, 123 (emphasis added). And the phrase "*by* . . . force" appears only in § 888(B)(3). But this hardly seems dispositive, especially when the charging document only generally references § 888, rather than specifically citing § 888(B)(3).

[11] We note that the charging document alleges Degeare "require[d]" his victim to engage in sodomy. R. vol. 1, 121.

29

*See Mathis*, 136 S. Ct. at 2257 (explaining that if charging document "referenc[es] one alternative term to the exclusion of all others," that indicates "the statute contains a list of elements, each one of which goes toward a separate crime"); § 888(B)(1) (defining forcible sodomy, in relevant part, as "sodomy committed by a person over [18] years of age upon a person under [16] years of age"). But again, it's not the only plausible one. As Degeare points out, the government's argument overlooks the fact that Degeare's 1990 forcible-sodomy conviction is based on conduct that occurred in 1989. And at that time, Oklahoma's forcible-sodomy statute (1) wasn't divided into subsections and (2) didn't reference the victim's age. Instead, it only generally prohibited "forc[ing] another person to engage in the detestable and abominable crime against nature." § 888 (1989).

Thus, by referencing the victim's age—instead of expressly alleging that Degeare "force[d]" the victim to engage in sodomy, *id.*—the charging document for Degeare's 1990 forcible-sodomy conviction arguably indicates that engaging in sodomy with a victim who was too young to consent was merely one of any number of "factual ways of committing [the force] component of the [1989] offense." *Mathis*, 136 S. Ct. at 2249; *see also Kimbro*, 857 P.2d at 799 (holding that jury instruction stating that child under 16 can't consent to sodomy didn't "negate[]" § 888's force requirement).

In any event, we need not decide which of the parties' competing interpretations of the charging documents is correct. We hold only that, whatever the charging documents might have to say about the means-or-elements question in this case, they don't say it "plainly." *Mathis*, 136 S. Ct. at 2257. And for the reasons discussed above, nothing else the government points to "clear[ly]" indicates that § 888(B)'s alternatives are elements,

30

either. *Id.* at 2256. Accordingly, in light of *Bruner*, we can't be more certain than not that § 888(B) is divisible. And that means the district court erred in applying the modified categorical approach; in treating Degeare's 1994 forcible-sodomy convictions as ACCA predicates under the elements clause; and in denying his § 2255 motion.

## Conclusion

In *Bruner*, the OCCA held that the alternative ways in which a defendant can violate the Oklahoma rape statutes at issue in that case were means, not elements. 612 P.2d at 1379–80. We see no reason to think the OCCA would reach a different conclusion about the similar ways of violating Oklahoma's forcible sodomy statute. And the government identifies none. Accordingly, we can't be "certain"—under any plausible definition of that term—that Oklahoma's forcible-sodomy statute is "necessarily" divisible. *Titties*, 852 F.3d at 1268 (quoting *Huizar*, 688 F.3d at 1195).

In light of this conclusion, we hold that the district court erred in relying on the modified categorical approach to determine that forcible sodomy is a violent felony. *Id.* at 1267. And because the government concedes that forcible sodomy isn't a violent felony under the pure categorical approach, we likewise hold that the district court erred in treating Degeare's 1994 convictions for forcible sodomy as ACCA predicates. That leaves Degeare with only a single qualifying conviction: his 2003 conviction for possession with intent to distribute. Because that single conviction isn't sufficient to trigger the ACCA's enhanced penalty, *see* § 924(e)(1), Degeare's ACCA sentence is illegal and he is entitled to relief. We therefore reverse

31

the district court's order denying Degeare's § 2255 motion, vacate his sentence, and remand for resentencing.