**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA JAMES MJONESS,

    Defendant - Appellant.

No. 20-8029

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:19-CR-00170-ABJ-1)**
_____

John C. Arceci, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant – Appellant.

Thomas A. Szott, Assistant United States Attorney (Mark A. Klaassen, United States Attorney, with him on the brief), District of Wyoming, Cheyenne, Wyoming, for Plaintiff – Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Joshua James Mjoness challenges his conviction under 18 U.S.C. § 924(c) for using and carrying a firearm in relation to a crime of transmitting threats in interstate commerce under 18 U.S.C. § 875(c). The question on appeal is whether 18 U.S.C. § 875(c) constitutes a crime of violence such that it may serve as a predicate for the

18 U.S.C. § 924(c) charge. Because § 875(c) provides separate elements in the form of threats to kidnap or, alternatively, threats to injure, we conclude Mr. Mjoness's offense of transmitting threats to injure in interstate commerce meets the definition of a crime of violence. We therefore affirm the district court's order, but on alternate grounds.

## I.  BACKGROUND

### A.  *Factual History*[1]

On September 18, 2019, Mr. Mjoness sent a text message from Wyoming to North Dakota containing a threat to injure another person. The text message included a picture of a firearm. Mr. Mjoness admitted he made this threat with the intent and knowledge it would be viewed as a threat, and that he included the picture of the firearm to make clear he would use the firearm as part of the threat.

### B.  *Procedural History*

In a five-count indictment, a federal grand jury in the District of Wyoming charged Mr. Mjoness with transporting a firearm in interstate commerce with the intent to commit a felony, in violation of 18 U.S.C. § 924(b) (Count I); two counts of "transmitt[ing] in interstate commerce a communication containing a threat to injure the person of another," in violation of 18 U.S.C. § 875(c) (Counts II & III); using and carrying a firearm during and in relation to federal crimes of violence—specifically, threats by interstate communications, as alleged in Counts II and III—in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count IV); and possessing a firearm as an unlawful user of a

---

[1] Because this matter was not tried, we take the facts from Mr. Mjoness's admissions at his change of plea hearing. These facts are undisputed on appeal.

controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (Count V). ROA, Vol. I at 9–11.

Mr. Mjoness moved to dismiss Count IV, the § 924(c) count, arguing § 875(c) does not constitute a crime of violence under the categorical approach and so is not a proper predicate. The district court denied the motion, reasoning there was no realistic possibility § 875(c) could be applied to acts that are not crimes of violence, meaning a violation of it categorically constitutes a crime of violence.

Thereafter, Mr. Mjoness entered into a plea agreement with the government, under which he pleaded guilty to the § 924(c) count in return for the government dismissing the other four counts. The parties also agreed to a sentence of 60 months' imprisonment; if the court imposed a higher sentence, the plea agreement became void. In addition, the plea agreement was conditional—Mr. Mjoness reserved his right to appeal the district court's denial of his motion to dismiss the § 924(c) count. If Mr. Mjoness prevails on that argument before this court, the agreement provides that he may withdraw his guilty plea and the government may reinstate the remaining counts in the indictment.

The district court accepted the plea agreement and sentenced Mr. Mjoness to 60 months' imprisonment. Mr. Mjoness now exercises his reserved right to appeal the district court's denial of his motion to dismiss the § 924(c) charge.

## II.    DISCUSSION

The question in this case is whether 18 U.S.C. § 875(c) constitutes a crime of violence and may therefore serve as a predicate offense under § 924(c). A "crime of violence," for purposes of § 924(c), is a felony that "has as an element the use, attempted

use, or threatened use of physical force against the person or property of another."

18 U.S.C. § 924(c)(3)(A). To determine whether an offense is a crime of violence, courts may compare only the statutory definition of the predicate crime with § 924(c)'s definition of "crime of violence"; courts may not consider the facts underlying a particular offense. *United States v. Bowen*, 936 F.3d 1091, 1102 (10th Cir. 2019). This restricted inquiry is dubbed the "categorical approach." *Id.* Section 875(c) criminalizes threats to kidnap as well as threats to injure. If these alternatives are merely different means by which a defendant can commit a particular element of a single crime, we apply the categorical approach. In contrast, if the alternatives are separate elements, either of which can be proved beyond a reasonable doubt to constitute a distinct crime, we apply the "modified categorical approach" and review record materials to determine which element formed the basis of the conviction. The latter type of criminal statute—i.e., one that sets out one or more elements of the crime in the alternative—is referred to as a "divisible statute." *Descamps v. United States*, 570 U.S. 254, 258 (2013). A statute is "indivisible" if it does not contain alternative elements. *Id.*

Mr. Mjoness argues § 875(c) is indivisible and a threat to kidnap does not categorically require a threat of physical force because kidnapping can be accomplished by inveiglement.[2] The government raises three counterarguments on appeal. First, the

---

[2] Mr. Mjoness also makes, for preservation purposes only, the argument that 18 U.S.C. § 875(c) does not constitute a crime of violence because the *mens rea* required is recklessness. He concedes he did not raise the issue before the district court and cannot succeed on plain error review under this court's current precedent. At the time of the parties' briefing, the law of this circuit was that a *mens rea* of recklessness could satisfy the Armed Career Criminal Act's nearly-identical elements clause. *United States v. Pam*, 867 F.3d 1191, 1207–08 (10th Cir. 2017). During the pendency of this appeal, the

government argues § 875(c) is divisible, and because Mr. Mjoness was convicted under the threat-to-injure branch there is no need to consider whether a threat to kidnap may be accomplished without violence. Second, the government contends a nonviolent threat to kidnap would not constitute a "true threat" and thus could not be prosecuted under § 875(c).[3] Third, the government asserts that a nonviolent threat to kidnap, even if theoretically possible, is not a realistic probability and therefore does not prevent § 875(c) from being a crime of violence for purposes of § 924(c). Because we conclude that

---

Supreme Court overruled our prior decisions and held that a criminal offense with a *mens rea* of recklessness does not qualify as a "violent felony" under the Armed Career Criminal Act's elements clause. *Borden v. United States*, No. 19-5410, 2021 WL 2367312, at *2 (U.S. June 10, 2021). We have held, however, that a conviction under § 875(c) requires intent; that is, a violation of § 875(c) cannot be committed with a *mens rea* of mere recklessness. *United States v. Heineman*, 767 F.3d 970, 982 (10th Cir. 2014). The Supreme Court has left this question open. *See Elonis v. United States*, 575 U.S. 723, 740 (2015) (expressly reserving the question of whether recklessness would suffice to support a conviction under § 875(c)). Therefore, even after *Borden,* Mr. Mjoness's argument cannot succeed under this court's precedent.

The government contends Mr. Mjoness's theory regarding recklessness is waived due to his failure to reserve it in the plea agreement pursuant to Federal Rule of Criminal Procedure 11(a)(2). We agree with the government.

Mr. Mjoness "reserve[d] his right to appeal the adverse determination of his motion to dismiss Count Four." ROA, Vol. II at 13. That motion, however, did not argue the recklessness theory Mr. Mjoness now advances for preservation purposes. Mr. Mjoness claims circuits are split on review of arguments not timely presented under Federal Rule of Criminal Procedure 12, and thus he seeks to preserve the argument that we should review his new theory for plain error, rather than hold it waived. Mr. Mjoness, however, does not address the government's plea agreement waiver argument. We accordingly hold Mr. Mjoness failed to reserve his recklessness theory in his plea agreement and it is therefore waived. *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1299 (10th Cir. 2008) ("A reservation of the right to appeal a specific pretrial ruling by the district court extends only to theories raised in the challenged ruling.").

[3] True threats are those "outside the protective scope of the First Amendment" which therefore may be criminalized. *United States v. Wheeler*, 776 F.3d 736, 742–43 (10th Cir. 2015).

§ 875(c) is divisible and that an offense based on a threat to injure is a crime of violence, we affirm on those alternate grounds.[4]

### A.   Legal Background

**1.  Title 18, Section 924(c)**

Title 18, Section 924(c)(1)(A) of the United States Code proscribes "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence," or "in furtherance of any such crime, possess[ing] a firearm." As noted, a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[5]

"[T]he 'force' component in 'physical force' refers to 'violent force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Muskett*, 970 F.3d 1233, 1239 (10th Cir. 2020) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)), *cert. denied*, 141 S. Ct. 1710 (2021). This requires "only potentiality," not "any particular degree of likelihood or probability that the force used will cause physical

---

[4] In reaching this holding, we exercise our discretion to "affirm on any ground adequately supported by the record." *United States v. Chavez*, 976 F.3d 1178, 1203–04 n.17 (10th Cir. 2020) (quotation marks omitted). Although the district court decided this case on a different basis, the issue of divisibility was fully briefed before the district court as well as this court and no factual development is necessary. Accordingly, this case is an appropriate one for affirmance on alternate grounds. *Cf. id.* (declining to affirm on an alternate ground because the parties had not "fully briefed and argued the alternate ground," nor did they have "a fair opportunity to develop the factual record" (internal quotation marks omitted)).

[5] The Supreme Court has held 18 U.S.C. § 924(c)(3)(B), which included as crimes of violence those that have "a substantial risk that physical force against the person or property of another may be used," is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2323–24, 2336 (2019). Accordingly, § 924(c)(3)(A) is the only provision at issue.

pain or injury." *Id.* (quoting *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019)). And "physical" means "force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." *Id.* (quoting *Johnson*, 559 U.S. at 138).

## 2. The Categorical Approach

Under the categorical approach, courts "look[] to the elements of the statute of conviction 'and not to the particular facts underlying [that conviction].'" *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017) (second alteration in original) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Put another way, the court must examine "whether the elements of the offense are of the type that would justify its inclusion . . . without inquiring into the specific conduct of this particular offender." *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1061 (10th Cir. 2018) (quotation marks omitted). But for a crime to fall outside the definition, "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Laws that are alternatively phrased—that is, laws that utilize two or more terms in the disjunctive—present a more complicated inquiry. "The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). "Elements" are the constituent parts of the definition of a crime, the things the prosecution must prove beyond a reasonable doubt to sustain a conviction. *Id.* at 2248.

7

By contrast, "means" are different ways of committing a single element. *Id.* at 2249. A jury need not unanimously agree upon which factual "means" a defendant used to commit an element of the offense; it is enough that each juror believes the defendant committed all elements via one or more means. *Id.* If the alternative phrasing sets forth means, the statute is indivisible and the court must apply the categorical approach as normal. *Id.* at 2256. But if a statute sets forth alternative elements, the statute is divisible and the court must "review the record materials to discover which of the enumerated alternatives played a part in the defendant's . . . conviction, and then compare that element (along with all others)" to the relevant standard (here, § 924(c)(3)(A)'s definition of crime of violence). *Id.* This is called the "modified categorical approach." *Id.* at 2249.

### 3. Title 18, Section 875

The pertinent provision here, 18 U.S.C. § 875(c), proscribes "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." "In addition to the elements specified in the statute, . . . the government must prove the defendant transmitted the communication for the purpose of issuing a threat or with knowledge the communication would be viewed as a threat." *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018) (citing *Elonis v. United States*, 575 U.S. 723, 740 (2015)).

"Kidnap" in § 875(c) refers to the definition of "kidnap" Congress set forth in 18 U.S.C. § 1201, not the common-law crime. *United States v. Mobley*, 971 F.3d 1187, 1202–03 (10th Cir. 2020). Section 1201 employs a "verb string" to define kidnap. *Id.* A person kidnaps when he "unlawfully seizes, confines, inveigles, decoys, kidnaps,

abducts, or carries away and holds for ransom or reward or otherwise" another person. 18 U.S.C. § 1201(a). This verb string "criminalize[s] much more than common-law 'kidnap,'" which is "tak[ing] and carry[ing] away any person by force and against his will." *Mobley*, 971 F.3d at 1199–1200 (internal quotation marks omitted). In particular, it includes kidnapping by inveiglement—by deception or flattery. *See Inveigle*, *Black's Law Dictionary* (11th ed. 2019) (defining "inveigle" as "to lure or entice through deceit or insincerity; to persuade (someone) dishonestly").

### B.  Analysis

### 1.  Divisibility

The Supreme Court in *Mathis* "identified several tools for deciding whether an alternatively phrased criminal law lists elements or means." *United States v. Titties*, 852 F.3d 1257, 1267 (10th Cir. 2017); *see Mathis*, 136 S. Ct. at 2256–57. These include (1) court decisions; (2) the statute's text; and (3) if those tools fail, looking to record documents for an indication (the "peek" method). *Titties*, 852 F.3d at 1267–68; *Mathis*, 136 S. Ct. at 2256–57.[6] But if "a clear answer to the means-or-elements question remains elusive," the court "must eschew the modified categorical approach" and assume the alternatives are means rather than elements. *United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018) (citing *Mathis*, 136 S. Ct. at 2257, discussing the need for certainty

---

[6] We note these tools were identified for use "[i]n deciding whether a *state* statute's alternatives are elements or means." *United States v. Degeare*, 884 F.3d 1241, 1247 (10th Cir. 2018) (emphasis added). This case requires us to consider whether a *federal* statute is divisible. Both parties ask this court to apply the *Mathis* framework, however. Accordingly, we do so.

that a statute's alternatives are elements rather than means). This court has not "yet resolved what quantum of certainty" is necessary, but whatever it is, the court must "be *at least* more certain than not that a statute's alternatives constitute elements before we will treat that statute as divisible." *Id.* at 1248 n.1 (emphasis in original).[7]

We now consider each of the tools identified by the Court to determine whether § 875(c) sets forth means or elements.

### a. Caselaw

Our research has identified only two cases binding upon this panel that have touched on the relevant issue. In *Elonis*, the Supreme Court granted certiorari to determine whether § 875(c) "requires that the defendant be aware of the threatening nature of the communication, and—if not—whether the First Amendment requires such a showing." 575 U.S. at 726. As a preface to its discussion, the Supreme Court paraphrased § 875(c): "This statute requires that a communication be transmitted and that the communication contain a threat. It does not specify that the defendant must have any mental state with respect to these elements." *Id.* at 732. The Court summarized the statute to illustrate it "does not indicate whether the defendant must intend that his communication contain a threat." *Id.* In doing so, the Supreme Court did not express a view as to whether § 875(c) contains means or elements when it provides two alternatives

---

[7] At oral argument, counsel for Mr. Mjoness suggested our decision in *United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020), resolved this question. We do not agree. In *Cantu*, we explained we will not apply the modified categorical approach if "we cannot ultimately say with certainty that the statute is divisible." *Id.* But we cited *Degeare* for this proposition, and we did not purport to resolve the level of certainty required.

for violating the statute: threat to injure and threat to kidnap. Accordingly, *Elonis* is not controlling here.

In *Stevens*, the defendant challenged his § 875(c) conviction, arguing his interstate messages did not constitute true threats. 881 F.3d at 1251. As part of the legal background, we added numbers to § 875(c) to indicate its elements: "Whoever [1] transmits in interstate or foreign commerce [2] any communication containing [3] any threat to kidnap any person or any threat to injure the person of another . . . ." *Stevens*, 881 F.3d at 1252–53 (alterations in original) (quoting 18 U.S.C. § 875(c)). We then stated *Elonis* "recognized a fourth element," that "the defendant transmitted the communication for the purpose of issuing a threat or with knowledge the communication would be viewed as a threat." *Id.* at 1253. But like *Elonis*, *Stevens* was not concerned with whether a "threat to kidnap" and a "threat to injure" in § 875(c) constitute elements or means. Rather, we quoted § 875(c) as part of the legal background, but focused our analysis on whether the messages constituted true threats. *See id.* at 1253–56.[8] Thus, our numbering of the elements is dicta.

The government directs our attention to *United States v. Chapman*, 866 F.3d 129 (3d Cir. 2017). There, the Third Circuit considered 18 U.S.C. § 876(c). That statute is identical in all material respects to § 875(c), except that it forbids sending threats through the mail rather than across state lines. *Compare* 18 U.S.C. § 875(c), *with id.* at § 876(c).

---

[8] Indeed, there was no need to discuss the threat-to-kidnap alternative because the threats at issue were all threats to injure, specifically threats to kill. *See United States v. Stevens*, 881 F.3d 1249, 1256–58 (10th Cir. 2018) (listing the ten threatening messages underlying the charges).

The Third Circuit held § 876(c) was divisible, concluding it "'comprises multiple, alternative versions of the crime.'" *Chapman*, 866 F.3d at 134 (quoting *Descamps*, 570 U.S. at 262). The court identified "[t]hose versions [as]: (1) knowingly mailing any communication containing any threat to kidnap any person; and (2) knowingly mailing any communication containing any threat to injure the person of the addressee or of another." *Id.*

*Chapman*, however, lacks any persuasive analysis of the divisibility question. The *Chapman* court made a passing reference to an example presented by the Supreme Court in *Mathis,* stating: "An example of an indivisible statute: a statute that criminalizes 'the entry of a premises with the intent to steal.' By contrast, that statute would be divisible if 'entry' is swapped with 'lawful entry, or in the alternative, unlawful entry.'" *Id.* at 134 n.5. *Chapman* was referring to an example *Mathis* gave of a divisible statute. The *Mathis* Court stated: "Suppose, for example, that the California law noted above had prohibited 'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses, one more serious than the other." *Mathis,* 136 S. Ct. at 2249. *Chapman,* however, omitted an essential feature of the Supreme Court's example, namely that the hypothetical statute "create[d] two different offenses." *Compare id.*, *with Chapman*, 866 F.3d at 134 n.5 (not including this language).

A close reading of *Mathis* demonstrates the problem with this omission. In *Mathis*, the Supreme Court explained the categorical approach by looking to the statute at issue in its prior decision, *Taylor v. United States*. *Mathis*, 136 S. Ct. at 2248–49. *Taylor*, the case in which the Court first explained the categorical approach, considered a statute that

"criminalized entering a location (even if lawfully) with the intent to steal" and so swept more broadly than generic burglary, which required the entry to be unlawful. *Id.* at 2248–49, 2251. In discussing the modified categorical approach, the Court in *Mathis* stated: "Suppose, for example, that the California law [at issue in *Taylor*] had prohibited 'the lawful entry or the unlawful entry' of a premises with intent to steal, *so as to create two different offenses*, one more serious than the other." *Id.* (emphasis added). The Court then explained how the modified categorical approach could be used to identify which offense was the relevant comparator. *Id.*

The *Mathis* Court next addressed "a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." *Id.* Returning to the example of burglary, it explained, "a statute might . . . itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score." *Id.*

In context, the words "to create two different offenses" are crucial. Recall that the essential question is "elements or means?" *Id.* at 2256. To say a statute creates two different offenses is to say that that it includes alternative elements. The Supreme Court in *Mathis* used an example of a divisible statute—one with alternative elements—to illustrate application of the modified categorical approach.

Here, the statute itself does not designate the alternatives as two different offenses and they are not punished differently. Without the assumption in *Mathis* that the statute creates two offenses, all that can be definitively said is that a statute criminalizing "the

13

lawful entry or the unlawful entry" is alternatively phrased. To be sure, if a legislature makes one a more serious offense—that is, applies a harsher punishment for conviction of one branch—the statute is necessarily divisible. *Id.* ("If statutory alternatives carry different punishments, then . . . they must be elements."). But if the statute instead indicates that unlawful entry or lawful entry can satisfy the element, those alternatives would be means. *See id.* at 2251 ("The itemized construction gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition.").

That is where the reasoning in *Chapman* stumbles. The Third Circuit tells us that § 876(c) is divisible without explanation. 886 F.3d at 134. At the end of the sentence asserting this, it places a footnote that repeats the Supreme Court's example from *Mathis*. But unlike the assumption of divisibility embedded in the *Mathis* example, nothing in § 876(c) indicates the alternatives there "create two different offenses, one more serious than the other." Thus, *Chapman* provides no persuasive reasoning on whether § 876(c) is divisible, and it does not inform our present inquiry.

The government also cites two district court cases analyzing divisibility in the context of § 876(c), *Sotelo v. United States*, No. 3:16-CV-375 RLM, 2016 WL 6036977 (N.D. Ind. Oct. 14, 2016), *aff'd on other grounds*, 922 F.3d 848 (7th Cir. 2019), and *Tomkins v. United States*, No. 16-CV-7073, 2018 WL 1911805 (N.D. Ill. Apr. 23, 2018). In *Sotelo*, the court reasoned that nothing in the statutory text suggested "threat to kidnap" or "threat to injure" were "example[s]," which in turn suggested they were elements rather than means. 2016 WL 6036977, at *3. It is true that if a statute lists

14

examples, those alternatives must be means. But the inverse it not necessarily true. That is, the fact that "threat to kidnap" and "threat to injure" are not listed as examples in the statute does not necessarily make them elements. *See Degeare*, 884 F.3d at 1253 (explaining that statutory text of an Oklahoma statute did not resolve the means-or-elements question where the statute was not drafted to offer illustrative examples). A statute could provide a finite list of the ways an element can be satisfied, thereby creating a specific list of means, rather than an open-ended list of examples. In such a case the alternatives are means, rather than elements, notwithstanding that they are not listed as examples. *See Mathis*, 136 S. Ct. at 2250 (holding a statute criminalizing entry into "any building, structure, *[or] land, water, or air vehicle*" listed alternative means rather than alternative elements (alteration and emphasis in original) (quoting Iowa Code § 702.12 (2013))). Thus, *Sotelo* does not provide reasoning that supports an interpretation of the alternatives in § 875(c) as either means or elements.

In *Tomkins*, the court characterized *United States v. Lynn*, 851 F.3d 786 (7th Cir. 2017), as stating where there is "more than one way of committing" an offense, the statute states an element. 2018 WL 1911805, at *7 (quoting *Lynn*, 851 F.3d at 797). This misreads *Lynn*, which relied upon a state court decision holding that the alternatively phrased state statute provided separate elements. 851 F.3d at 797 (citing *People v. Nichols*, 979 N.E.2d 1002, 1013–14 (Ill. 2012)). The *Tompkins* court mistook *Lynn*'s definition of alternative phrasing for a definition of divisibility. The better reading of *Lynn* is that when there is "more than one way of committing" an offense, the statute is alternatively phrased but not necessarily divisible. *Id.* This comports with *Mathis*, where

15

there was more than one way of committing burglary—one could break into either a structure or a vehicle—but the Court held the alternatives were means rather than elements. 136 S. Ct. at 2256.

Finally, the government notes that prior to *Mathis*, numerous circuits held § 876(c) is a crime of violence. But nothing about these pre-*Mathis* decisions sheds light on whether those circuits would agree § 876(c) is divisible under the post-*Mathis* categorical approach. Accordingly, we do not consider pre-*Mathis* precedent persuasive.

In sum, our inquiry into existing caselaw is inconclusive.

b. *Statutory Language*

"*Mathis* lists three ways in which a 'statute on its face may resolve' the means-or-elements question." *Degeare*, 884 F.3d at 1253 (quoting *Mathis*, 136 S. Ct. at 2256). These are: (1) whether the alternatives carry different punishments (making them elements); (2) whether the alternatives are illustrative examples (making them means); and (3) whether the statute identifies "which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* (quoting *Mathis*, 136 S. Ct. at 2256). None of these considerations answers the question here.

The relevant statutory text proscribes "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). A person who does so "shall be fined under this title or imprisoned not more than five years, or both." *Id.* Because the alternatives do not carry separate penalties, they are not necessarily elements. But the single penalty does not dictate they are means. *See Degeare*, 884 F.3d at 1253. Likewise,

the statute appears to list two specific ways to violate it, rather than simply providing illustrative examples. If they were examples, we could easily conclude the statute provides means. But where they are finite alternatives, the question remains open as to whether they are means or elements. *See id.* Finally, nothing in the statute identifies "which things must be charged (and so are elements) and which need not be (and so are means)." *Mathis*, 136 S. Ct. at 2256.

To the extent the "statute-on-its-face" analysis extends past these considerations, the text remains inconclusive.[9] The government argues the repetition of the phrase "any threat," used prior to both the phrases "to injure" and "to kidnap" suggests the alternatives are elements. We agree the phrasing of the statute allows a weak inference that a threat to injure and a threat to kidnap constitute different elements. But, as Mr. Mjoness notes, "such repetition simply enhances readability where threats to kidnap are directed to 'any person' and those to injure are directed to 'the person of another.'" Reply Br. at 2. Under these circumstances, the repetition of "any threat" does not resolve whether the alternatives are means or elements.

The government also contends that because the threat-to-kidnap alternative incorporates the legal definition of "kidnapping," and because a jury would need to conclude the threatened outcome met this legal definition, the threat-to-kidnap alternative is properly construed as an element, rather than a means. That a term has a precise legal

---

[9] In *Degeare*, we rejected an argument that the fact that alternatives appeared in separate subsections indicated they were elements. 884 F.3d at 1253–54. In doing so, we noted the argument went "beyond the statutory characteristics that *Mathis* treats as relevant." *Id.* at 1253.

definition, however, does not necessarily suggest it is an element rather than simply a means by which an element can be satisfied. It will always be the case that terms in a statute—set out alternatively or otherwise—are subject to legal interpretation and debate. For example, the Iowa statute at issue in *Mathis* defined burglary to include entry into structures, appurtenances thereto, or vehicles. Iowa Code §§ 702.12, 713.1 (2013). These terms—structures, appurtenances, and vehicles—have been the subject of further definition. The Iowa Supreme Court has had to determine exactly what qualifies as an appurtenance on several occasions. *See State v. Rooney*, 862 N.W.2d 367, 376 (Iowa 2015) (collecting cases). Yet despite the legal nature of this definition, we know Iowa's statute references means, not elements. *Mathis*, 136 S. Ct. at 2250 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

In turn, Mr. Mjoness makes a textual argument based on the structure of § 875(c). He argues the fact that § 875's four subsections contain different elements and penalties suggests Congress used the four subsections to differentiate among separate crimes.[10] He

---

[10] The full text of 18 U.S.C. § 875 is:

> (a) Whoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined under this title or imprisoned not more than twenty years, or both.
> (b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than twenty years, or both.
> (c) Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

asserts the structure of the statute thus reflects "a clear delineation of crimes by subsection, undermining the likelihood of further divisibility within each subsection." Reply Br. at 2–3. We agree § 875(c) can be read to provide some limited support for a Congressional intent to distinguish separate crimes by individual subsections, with alternatives within a subsection constituting means. But the statute's structure is far from conclusive.

In sum, none of the textual considerations suggest a clear answer to whether the alternatives in § 875(c) are means or elements. Therefore, we proceed to the next method of analysis identified by the Court—the "peek" method. *See Mathis*, 136 S. Ct. at 2256–57 (explaining that if caselaw and the statute itself "fail[] to provide clear answers, federal judges have another place to look: the record of a prior conviction itself").

*c. "Peek"*

Record documents may indicate a criminal statute's alternatives are means rather than elements where "the charging document or jury instructions 'reiterat[e] all the [statutory alternatives]'" or "'use a single umbrella term.'" *Degeare*, 884 F.3d at 1254 (alterations in original) (quoting *Mathis*, 136 S. Ct. at 2257). By contrast, when these documents "instead 'reference[e] one alternative term to the exclusion of all others,'"

---

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

they indicate the statute contains a list of elements. *Id.* (quoting *Mathis*, 136 S. Ct. at 2257).

Because Mr. Mjoness pleaded guilty and did not go to trial, there are no jury instructions from his case to consult. In such circumstances, we have held "uniform jury instructions can provide insight into the means/elements question." *Titties*, 852 F.3d at 1270 n.15.[11] Looking to uniform or pattern jury instructions technically does not qualify as employing the peek method, because the peek method involves review of record documents, rather than legal guidance not specific to the case. *Degeare*, 884 F.3d at 1254 n.6. Nevertheless, it is prudent "to analyze the relevant uniform instructions alongside the relevant charging documents because *Mathis* indicates the same analysis applies" to charging documents and pattern or uniform jury instructions. *Id.*

i. Charging document

The charging document in this case states Mr. Mjoness "transmitted in interstate commerce a communication containing a threat to injure the person of another." ROA, Vol. I at 10. That is, the charging document alleges only that Mr. Mjoness made a "threat to injure," and does not mention a "threat to kidnap." The indictment "indicate[s], by referencing one alternative term to the exclusion of all others, that the statute contains a

---

[11] *Titties* involved referencing a state's uniform jury instructions. *United States v. Titties*, 852 F.3d 1257, 1270–71 n.15 (10th Cir. 2017). The parties suggest looking to uniform jury instructions is an appropriate analytical method in federal cases, as well; specifically, they argue we should look to this circuit's pattern jury instructions.

list of elements." *Mathis*, 136 S. Ct. at 2257. The charging document thus supports a

conclusion that § 875(c) is divisible.[12]

ii. Jury instructions

The Tenth Circuit Pattern Jury Instructions provide:

> To find the defendant guilty of [violating 18 U.S.C. § 875(c)] you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: the defendant knowingly transmitted a communication containing a threat to [kidnap any person] [injure the person of another];
>
> *Second*: the defendant transmitted the communication with the intent to make a threat, or with knowledge that the communication will be viewed as a threat;
>
> *Third*: the communication was transmitted in interstate or foreign commerce. . . .

10th Cir. Crim. Pattern Jury Instructions No. 2.37.1 (second and third sets of brackets in

original).[13]

---

[12] The government notes "this charging language only reflects the government's drafting decision in [Mr.] Mjoness'[s] case." Appellee Br. at 23. It reports that indictments and superseding indictments available on Westlaw also tend to charge only the threat-to-injure alternative, without mentioning the threat-to-kidnap alternative. *Id.* at 23 n.6. Mr. Mjoness counters that the government's "random selection of charging decisions" from Westlaw is too "small a universe" to be significant. Reply Br. at 4 n.2.

In *Mathis*, the Supreme Court instructed judges could look at "the record of a prior conviction itself," 136 S. Ct. at 2256, not to charging documents from other cases. We follow the direction of the Supreme Court and rely upon the charging document in *this* case as support for construing a threat to injure and a threat to kidnap as alternative elements.

[13] This instruction also provides a definition of "threat," *see* 10th Cir. Crim. Pattern Jury Instructions No. 2.37.1, but that definition does not shed light on the divisibility issue. Nor does the accompanying use note provide any illumination, as it does not discuss § 875(c)'s "kidnap any person" or "injure the person of another" language. *Id.*

21

The use of separate sets of brackets, the first containing "kidnap any person" and the second containing "injure the person of another," is most reasonably read as providing a choice between the two possibilities. *See* 10th Cir. Crim. Pattern Jury Instructions, Introductory Note ("Brackets indicate optional material or material that needs to be adapted to a given case.").[14] That is, the instruction will be finalized by selecting the bracketed language that is applicable, so in the typical case the jury is instructed it must find only one of the two choices. This indicates the alternatives are elements rather than means. Where the jury instructions "referenc[e] one alternative term to the exclusion of all others" rather than listing both, the alternatives are elements. *Mathis*, 136 S. Ct. at 2257.

* * *

The Supreme Court in *Mathis* stated that where the "indictment and jury instructions . . . referenc[e] one alternative term to the exclusion of all others," they should be read to "indicate . . . that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* Here, the answer is apparent because the pattern jury instructions and charging document call for only one of the alternative threats. *See id.* (noting that "record materials will not in every case speak plainly, and *if they do not*, a sentencing judge will not" have the requisite certainty to decide the means/elements issue

---

[14] At oral argument, the government suggested we should not place reliance on this pattern jury instruction because it is not based on an actual decision from this court. We have held, however, that state uniform jury instructions are a source of law for the means/elements inquiry. *Titties*, 852 F.3d at 1270 n.15; *Degeare*, 884 F.3d at 1254 n.6. And the government asserts that "the same principles generally should apply to analyzing a federal statute." Appellee Br. at 19 n.9. Using those principles, we consider the pattern jury instructions instructive.

(emphasis added)). Where these materials speak plainly, the requisite level of certainty is met.

Thus, applying the tools identified in *Mathis*, we conclude with the requisite certainty that the alternatives in § 875(c) are elements, not means. We therefore apply the modified categorical approach to determine whether a threat to injure in violation of § 875(c) is a crime of violence.

## 2. Threat to Injure

Under the modified categorical approach, we "review the record materials to discover which of the enumerated alternatives played a part in the defendant's . . . conviction, and then compare that element (along with all others)" to the relevant standard, here § 924(c)(3)(A). *Id.* at 2256. We may consider only certain documents to make that determination, specifically "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *accord Mathis*, 136 S. Ct. at 2249 ("Under [the modified categorical] approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.").

Mr. Mjoness does not contest that he was charged with the threat-to-injure alternative. Moreover, that his offense fell under the threat-to-injure alternative is confirmed by his charging document, ROA, Vol. I at 10 (alleging Mr. Mjoness

"transmitted in interstate commerce a communication containing a threat to injure the person of another"); his plea agreement, ROA, Vol. II at 13–14 (listing as an element that Mr. Mjoness "violated 18 U.S.C. § 875(c) by transmitting, in interstate commerce, one or more threats to injure another person" and requiring that Mr. Mjoness agree to provide a complete factual basis to support the plea); and the factual basis Mr. Mjoness provided at his change-of-plea hearing, ROA, Vol. III at 31 (transcript of plea hearing at which Mr. Mjoness agreed he "transmit[ted] a communication containing a threat to injure the person of another"). Application of the modified categorical approach thus clearly identifies Mr. Mjoness's offense as an interstate threat to injure.

Having made that determination, our analysis proceeds to the next step—applying the categorical approach to the elements of conviction. The precise question is whether the elements of the "threat to injure" offense categorically involve "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Mr. Mjoness concedes his plea agreement did not reserve the right to argue the threat-to-injure alternative does not involve threatening the use of physical force. *See* Oral Argument at 8:41–9:05 (stating that "Mr. Mjoness didn't argue . . . the content of the threat-to-injure prong [before the district court], and so under [his] conditional plea, . . . whether or not a threat to injure" involves the use of physical force "is not before th[is] court"). Thus, this argument is waived.

Even if he had reserved that argument, however, it would be unsuccessful. "[T]he 'force' component in 'physical force' refers to 'violent force—that is, force capable of causing physical pain or injury to another person.'" *Muskett*, 970 F.3d at 1239 (quoting

24

*Johnson*, 559 U.S. at 140). A threat to injure another person necessarily involves threatening to use force capable of injuring another person. The threat-to-injure branch of § 875(c) is thus categorically a crime of violence for purposes of § 924(c).

Therefore, we hold Mr. Mjoness's conviction under § 875(c) for making an interstate threat to injure is a crime of violence and serves as a proper predicate crime to a violation of § 924(c).

### III.    CONCLUSION

Section 875(c) is divisible, and Mr. Mjoness violated that section by making interstate threats to injure. Mr. Mjoness's § 875(c) conviction is categorically a crime of violence. We therefore affirm the district court's denial of Mr. Mjoness's motion to dismiss the § 924(c) claim, but on alternate grounds to those relied on by the district court.